UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

901 PROPERTIES, LLC,

                              Plaintiff,

            -against-

BERNSTEIN-BURKLEY, P.C., et al.,

                              Defendants.

25-CV-7184 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff 901 Properties, LLC brings this legal malpractice action against its former legal counsel, Defendant Bernstein-Burkley, P.C., ("Bernstein-Burkley") and that law firm's individual attorneys, Defendants Raymond P. Wendolowski, Jr., Shawn P. McClure, and Nicholas D. Krawec (collectively, the "Individual Defendants"). Plaintiff alleges that Defendants committed malpractice while representing it in efforts to enforce a New York state judgment in Ohio. However, Defendants do not regularly conduct business in New York, did not direct any advertisements to New York, and instead only agreed to represent a New York entity in Ohio state court proceedings. Presently before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. For the reasons stated herein, the Court grants the Motion to Dismiss for lack of personal jurisdiction as to all Defendants and dismisses the Complaint in its entirety without prejudice.

### BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff is a New York limited liability company that maintains its offices in North White Plains, New York. ECF No. 1-1 ("Compl.") ¶ 4. Defendant Bernstein-Burkley is a law firm located in Pittsburgh, Pennsylvania. *Id.* ¶ 5. At all relevant times, the Individual Defendants were each attorneys employed in Bernstein-Burkley's Pittsburgh office. *Id.* ¶¶ 6–8. Wendolowski is licensed to practice law in Pennsylvania, while McClure and Krawec are licensed to practice in both Pennsylvania and Ohio. *Id.*

On March 12, 2015,[1] a judgment was entered by the Justice Court of the Town of North Castle, New York, against the Judgment Debtor Margaret Greene ("Judgment Debtor"), who is also known as Margaret Yeo, in the amount of $45,727.47. *Id.* ¶ 11; ECF No. 12-2 at 2. At some point after the entry of this judgment, the Judgment Debtor moved from New York to Ohio. Compl. ¶ 12.

After Plaintiff discovered the Judgment Debtor's location, Plaintiff contacted Bernstein-Burkley to engage it in collecting the Judgment Debtor's Ohio assets to satisfy the outstanding judgment. *Id.* ¶ 13–14. On February 28, 2023, Defendant Krawec responded to Plaintiff's inquiry, representing that Defendants were competent to domesticate the New York judgment in Ohio. *Id.* ¶ 14. Plaintiff requested to engage Defendants' legal services, and on March 10, 2023, Wendolowski communicated to Plaintiff that he was the partner that would perform the legal services and oversee the Ohio collection proceedings. *Id.* ¶ 15–16. On or about March 15, 2023, Defendants forwarded an engagement letter to Plaintiff, representing that Defendants would domesticate the judgment in Ohio, initiate collection procedures to satisfy the judgment, and

---

[1] Presumably due to typographical error, the Complaint erroneously states that the New York state judgment was entered on March 15, 2025. Compl. ¶ 11. *But see* ECF No. 12-2 at 2 (showing that the judgment was dated March 12, 2015).

2

keep Plaintiff informed of the matter. *Id.* ¶ 18. Plaintiff agreed to engage Defendants' legal services. *Id.* ¶ 19.

On March 29, 2023, Defendants communicated to Plaintiff that Plaintiff would receive updates within thirty days on the status of the case, and that Defendants planned to enter into a payment arrangement with the Judgment Debtor that would fully liquidate the debt in sixty days. *Id.* ¶ 20. Thereafter, Plaintiff provided Defendant with information regarding the Judgment Debtor's property, which was situated in Ohio. *Id.* ¶ 21. Plaintiff alleges that this property was subject to levy and execution and was available for execution to be applied against the judgment. *Id.* ¶ 22.

Although Defendants "made numerous representations that they were vigorously pursuing all available remedies against the Judgment Debtor" throughout the remainder of 2023, Plaintiff alleges that Defendants in fact did nothing. *Id.* ¶¶ 23–24. This inaction occurred despite the fact that Defendants had previously represented a judgment creditor against the same Judgment Debtor at issue here, had successfully collected against her, and were in possession of her financials and in communication with her previous attorneys. *Id.* ¶ 26.

Plaintiff complained to Defendants about the lack of progress in its case. *Id.* ¶¶ 25–27. In response to this complaint, Defendants attempted to schedule a deposition of the Judgment Debtor, and on or about May 22, 2024, filed a motion to compel the Judgment Debtor's appearance for her deposition. *Id.* ¶¶ 25, 27. Shortly thereafter, upon inquiry, Defendants informed Plaintiff that Wendolowski had retired from the practice of law, and that McClure would take over the prosecution of Plaintiff's action. *Id.* ¶ 28. Bernstein-Burkley continued to represent Plaintiff, but following transfer of the matter to McClure, Plaintiff never received any

communications from Defendants, including even after Plaintiff repeatedly attempted to obtain status updates on the matter. *Id.* ¶¶ 29–31.

On or about July 25, 2025, Plaintiff independently learned that there were two prior court appearances in Ohio in its matter, and that the Judgment Debtor was being represented by counsel. *Id.* ¶ 32. Because Defendants continued to fail to communicate with Plaintiff, Plaintiff contacted the Judgment Debtor's attorney directly. *Id.* ¶ 33. The Judgment Debtor's attorney informed Plaintiff that the Judgment Debtor moved to dismiss the Ohio proceedings for failure to attempt service, that Bernstein-Burkley had failed to respond to the motion, and that Plaintiff defaulted after Bernstein-Burkley failed to appear for the two court appearances before the Ohio judge. *Id.* Accordingly, the Ohio court dismissed the matter with prejudice. *Id.* The Judgment Debtor's attorney also stated that the Judgment Debtor was elderly and that in light of the time that had passed since the case's dismissal, there was little chance to recover any property from her. *Id.*

Following this conversation, Plaintiff made inquiries to the Pennsylvania Disciplinary Board and the Ohio Supreme Court, and discovered that Wendolowski was never admitted to or licensed to practice in the State of Ohio. *Id.* ¶ 34. Plaintiff alleges that because of Defendants' "repeated failures" and "general incompetence," the New York state judgment still remains outstanding.[2] *Id.* ¶ 35.

On July 28, 2025, Plaintiff filed its Complaint in the Supreme Court of Westchester County. Compl. Plaintiff brings claims of legal malpractice, breach of contract, disgorgement of fees, and fraudulent inducement. *Id.* ¶¶ 36–57. On August 28, 2025, Defendants removed this

---

[2] On May 5, 2026, Defendants alerted the Court that Plaintiff, through new Ohio counsel, successfully collected the underlying judgment in Ohio on May 1, 2026. ECF No. 23.

action to this Court. ECF No. 1. On October 24, 2025, Defendants moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) and (6), arguing that the Court lacks personal jurisdiction over them and that Plaintiff failed to state a claim. ECF No. 11. Plaintiff opposed this motion on October 30, 2025. ECF No. 20 ("Opp."). Defendants replied on November 5, 2025. ECF No. 21–22.

## LEGAL STANDARD

"On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that jurisdiction exists, and where the district court did not conduct a full-blown evidentiary hearing on a motion, the plaintiff need make only a prima facie showing of jurisdiction." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (cleaned up). "At the pleading stage, a plaintiff may make a *prima facie* showing by relying on its pleadings and affidavits, and a showing of personal jurisdiction may be established solely by allegations." *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 578 (S.D.N.Y. 2022). "If the Court lacks personal jurisdiction over a defendant, the claims against that defendant must be dismissed." *Id.* Courts "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022) (quoting *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008)).

## DISCUSSION

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The analysis is threefold: First, the Court must determine whether jurisdiction is appropriate under New York's long-arm statute. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021). If yes, "then the Court must determine

5

whether the exercise of jurisdiction comports with federal due process requirements—that is, whether 'the defendant has certain minimum contacts with the [s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). Finally, even if these two requirements are met, personal jurisdiction exists only where a plaintiff's service of process upon the defendant was procedurally proper. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010).

For the first step of this analysis, the applicable long-arm statutes are N.Y. C.P.L.R. § 301 ("Section 301"), which allows the exercise of general personal jurisdiction, and N.Y. C.P.L.R. § 302 ("Section 302"), which sets forth New York's specific jurisdiction requirements. The Court first determines that it does not maintain general personal jurisdiction over Defendants. Next, the Court determines that it does not have specific personal jurisdiction over Defendants under either Section 302(a)(1) or Section 302(a)(3). Finally, the Court determines that jurisdictional discovery is unwarranted.

## I.     There Is No General Personal Jurisdiction Over Defendants

Section 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] ... do[ ] business in [New York]." *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508 (S.D.N.Y. 2023) (alterations in original) (quotation marks omitted) (quoting *Delgado-Perez v. City of New York*, No. 17-CV-1194 (LTS), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018)). "For a New York court to exercise general jurisdiction over a nonresident defendant, that defendant must be 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" *Id.*

6

(quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)). The Second Circuit has stated that "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (collecting cases).

Here, in its Complaint, Plaintiff asserts that the "Court has personal jurisdiction over each of the Defendants pursuant to Section 301 of the New York Civil Practice Law and Rules ('CPLR') as they conducted business within the State of New York, and pursuant to CPLR 302 because the causes of action asserted herein arise directly from Defendants' tortious conduct that occurred within and without the State of New York which caused injury to the Plaintiff." Compl. ¶ 9. However, in its Opposition, Plaintiff appears to abandon its assertion that the Court maintains general personal jurisdiction over Defendants, and submits only that "Plaintiff has established jurisdiction under both CPRL 302(a)(1) and (a)(3)." Opp. at 7; *see Ashmeade v. Amazon.com*, No. 23-CV-4331 (KMK), 2024 WL 4266391, at *19 (S.D.N.Y. Sept. 23, 2024) (determining that claims were abandoned when a plaintiff "failed to respond to [defendant's] arguments . . . nor . . . raise any arguments at all with respect to these claims in his Opposition") (collecting cases); *Roddey v. KPMG L.L.P.*, No. 22-CV-7405 (VSB), 2025 WL 1104538, at *5 n.2 (S.D.N.Y. Apr. 14, 2025) (determining that a plaintiff abandoned its jurisdictional arguments by failing to address them in her opposition to the defendant's motion to dismiss).

Nevertheless, the Court agrees that it may not exercise general personal jurisdiction over any of Defendants, because Plaintiff does not allege any facts to suggest that Defendants had continuous or systematic contacts with New York. *See Bank Brussels Lambert*, 305 F.3d 120, 127–28 (2d Cir. 2002) (affirming that there was no general personal jurisdiction over a law firm, even when that firm "performed work for numerous New York clients and New York law firms,

and in its marketing materials . . . touted, *inter alia*, its 'close relationship with the Federal Reserve Bank of New York'"); *see also infra* Sections II–III.

## II.    There Is No Personal Jurisdiction Over Defendants Under Section 302(a)(1)

The Court does not possess specific personal jurisdiction over Defendants under Section 302(a)(1). Under Section 302(a)(1), a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the plaintiffs' "cause of action aris[es] from" that "transact[ion]." N.Y. C.P.L.R. § 302(a)(1). In other words, in determining whether personal jurisdiction may be exercised under Section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (alteration in original) (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)). "A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (alteration in original) (citations omitted). "Because N.Y. C.P.L.R. § 302(a)(1) is a single act statute, proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities there were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Weintraub v. Empress Travel Trevose, Two-L's Ltd.*, No. 17-CV-552 (PGG), 2018 WL 4278336, at *4 (S.D.N.Y. Mar. 6, 2018) (cleaned up).

Defendants, in this action, did not "transact[] any business within" New York under the meaning of Section 302(a)(1). "[I]n the context of legal services, courts in the Second Circuit

have regularly found that providing legal services or representation for clients who happen to be domiciled in New York is not sufficient to constitute 'transaction of business.'" *Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d 104, 114 (E.D.N.Y. 2023) (collecting cases); *see also Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 624–25 (S.D.N.Y. 2015) (holding that there was no personal jurisdiction when "the conduct at issue is the provision of legal services—specifically, the performance of legal research and the rendering of legal advice—from outside of New York," even when Defendants "communicate[d] with Plaintiff's team in New York").

Here, Plaintiff alleges that Defendants are all based in Pittsburgh, Pennsylvania, and the Individual Defendants are barred in Pennsylvania and Ohio. Compl. ¶¶ 5–8. Plaintiff hired Defendants to litigate proceedings in Ohio courts to recover Ohio-based assets. *Id.* ¶ 13–14. There is no indication that Defendants ever practiced law in New York, approached Plaintiff to represent them, retained any New York clients other than Plaintiff, or that any of the Individual Defendants have ever been to New York.

Nevertheless, Plaintiff argues that Defendants' engagement with Plaintiff alone created personal jurisdiction. Plaintiff maintains that because throughout the two-year relationship, Defendants communicated with Plaintiff, which is situated in New York, and the New York state court that issued the underlying judgment. Opp. at 8–9; ECF No. 20-6 (showing that on August 8, 2023, Defendant Wendolowski, in an email, stated that "We have already contacted the issuing [New York] court to obtain a version [of the underlying judgment] that the [Ohio] court will accept and hope to have the same in hand ASAP."). However, Defendants' communications directed at New York are *de minimis*. According to Plaintiff, Defendants seldomly contacted Plaintiff, and only once contacted a New York state court, for the narrow purpose of requesting a copy of the underlying New York state judgment. Compl. ¶¶ 30, 33; ECF No. 20-6. These limited

9

contacts with New York entities fall quite short of Defendants having purposefully availed themselves to New York's laws and protections. *See Epstein v. Thompson*, No. 9-CV-8696 (HB), 2010 WL 3199838, at *3 (S.D.N.Y. Aug. 12, 2010) ("Nor do contacts between out-of-state attorneys and New York clients confer jurisdiction over the attorneys, where, as here, the attorneys perform all legal work outside New York."). Therefore, there is no personal jurisdiction over Defendants arising from their representation of Plaintiff in the Ohio proceedings.

Similarly, Defendants' advertisements do not create personal jurisdiction over Defendants in New York. Plaintiff argues that the Defendants solicited business in New York through the American Lawyers Quarterly ("ALQ"), which is an international publication that advertises lawyers that are available to act as out-of-town counsel. Opp. at 7–8; ECF No. 20-3; ECF No. 20-4 at 3 (promoting the ALQ as "designed for those who wish to find and employ out-of-town counsel" and providing coverage "for all commercial centers, county seats, cities and sizable towns in the United States, as well as most commercial centers throughout the world"). However, nationwide advertisements, "which were not specifically targeted at New York residents, do not provide a basis specific personal jurisdiction" under Section 302(a)(1). *Goldman v. Trinity Sch. of Med. through Bd. of Trs.*, No. 23-CV-2935 (KAM) (JRC), 2024 WL 2832885, at *6 (E.D.N.Y. June 4, 2024), *aff'd*, No. 24-1827-CV, 2025 WL 1099088 (2d Cir. Apr. 14, 2025) (collecting cases).

In fact, the advertisements that Plaintiff provides actually support the contention that Defendants did not intend to transact business in New York. Defendant Bernstein-Burkley represented itself to only "cover[]" locations within Pennsylvania, West Virginia, and Ohio. ECF No. 20-3 at 2–3; *see also* ECF No. 20-4 at 5 (listing Bernstein-Burkley under "Attorneys in

Pennsylvania"). There is nothing in these advertisements that shows that Defendants transacted business within New York, or targeted the New York market for potential work.

Therefore, this Court does not maintain personal jurisdiction over Defendants under Section 302(a)(1). *See Mayes v. Leipziger*, 674 F.2d 178, 184–85 (2d Cir. 1982) ("[N]o court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.")

### III.    There Is No Personal Jurisdiction Over Defendants Under Section 302(a)(3)

For largely the same reasons as with regards to Section 302(a)(1), there is no personal jurisdiction over Defendants under Section 302(a)(3). Under Section 302(a)(3), personal jurisdiction exists over a non-domiciliary who "commits a tortious act without the state causing injury to person . . . within the state" if the non-domiciliary either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302 (a)(3)(i)–(ii).

Here, even assuming that Defendants committed a tortious act that caused Plaintiff injury in New York, neither Section 302(a)(3)(i) nor (ii) apply. First, Section 302(a)(3)(i) does not apply because Defendants did not solicit business, regularly or consistently engage in any course of conduct, or derive substantial revenue from services rendered in New York. *See* N.Y. C.P.L.R. § 302 (a)(3)(i). As discussed above, there are no allegations, or evidence presented before the Court, that Defendants directed any solicitation for business to New York. *See supra* Section II.

11

Furthermore, there is no allegation that Defendants regularly engage in business in New York, which is supported by the fact that none of the Individual Defendants are even licensed to practice in New York courts, *see* Compl. ¶¶ 6–8, none of Defendants are located in New York, *Id.* ¶¶ 5–8, and Bernstein-Burkley appears to only advertise its services as covering Pennsylvania, Ohio, and West Virginia, ECF Nos. 20-3 to 20-4.

Additionally, there is no evidence, and no allegations, that Defendants derived substantial revenue from services rendered in New York. In fact, it appears that Plaintiff's own engagement of Defendants resulted in no revenue, because Defendants agreed to represent Plaintiff on a 20% contingency fee basis, and there was no property recovered from which this fee could have been paid. ECF No. 20-2 (showing that Defendants agreed to a fee of 20% "of the amount we recover on this matter"); Compl. ¶ 33–35 (alleging that Defendants failed to recover any property in the underlying Ohio proceedings).

Section 302(a)(3)(ii) also does not apply because Defendants did not purposefully avail themselves of the benefits of New York's laws. N.Y. C.P.L.R. § 302 (a)(3)(ii). "[I]n order to establish long-arm jurisdiction under Section 302(a)(3)(ii) (not to mention the Due Process Clause), 'purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" *Bissonnette*, 138 F. Supp. 3d at 626 (quoting *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir. 1999)). In *Bissonette*, the court determined that there was no personal jurisdiction under Section 302(a)(3)(ii) when "Defendants never actively represented Plaintiff in New York proceedings or agreed that their *own* contract with Plaintiff would be governed by New York law," but rather "merely advised Plaintiff on two discrete matters relating to a book that was to be published through a New York publishing house." *Bissonnette*, 138 F. Supp. 3d at 627 (citing *Astor*

12

*Holdings, Inc. v. Steefel, Levitt & Weiss, P.C.*, No. 3-CV-1242 (SAS), 2003 WL 21108316, at *5 (S.D.N.Y. May 14, 2003)). Likewise, in *Astor Holdings*, the court similarly found no purposeful availment where an out-of-state firm never agreed to be subject to New York courts' jurisdiction, to have disputes resolved under New York law, or to use New York as a forum for dispute resolution. *Astor Holdings,* 2003 WL 21108316, at *5.

Here, as previously discussed, Defendants did not purposefully avail themselves of New York as a forum. Defendants never traveled to New York or practiced law in New York. Defendants did not agree in their engagement letter with Plaintiff to be governed by the laws of New York, to be subject to the jurisdiction of any New York courts, or to have any disputes resolved in New York. *See* ECF No. 20-2. In sum, Defendants' minimal contacts with New York, in the form of communications with Plaintiff and one, singular request for a document from a New York state court, are insufficient to constitute purposeful availment. Moreover, as previously discussed, there are no facts to indicate that Defendants derived substantial revenue from interstate or international commerce. Therefore, the Court does not maintain personal jurisdiction over Defendants under Section 302(a)(3).

In sum, jurisdiction is inappropriate under New York's long-arm statute. Accordingly, the Court dismisses Plaintiff's action against all Defendants without prejudice. *Smart Recovery Techs. LLC v. Supplies Plus MI LLC*, No. 24-CV-7406 (LJL), 2026 WL 787788, at *4 (S.D.N.Y. Mar. 20, 2026) ("When a plaintiff fails to make the requisite showing of jurisdiction over a defendant, the appropriate remedy is dismissal of all claims against that defendant without prejudice.").

13

**IV.    The Court Denies Plaintiff's Request for Jurisdictional Discovery**

The Court denies Plaintiff's request for further jurisdictional discovery. Op. at 10. "It is within a district court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004). "While discovery on the jurisdictional question is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiff must first make a threshold showing that there is some basis for the assertion of jurisdiction." *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (internal citations omitted). "Where a plaintiff fails to allege facts that would support a colorable claim of jurisdiction or identify a genuine issue of jurisdictional fact, that plaintiff should not be entitled to use the court processes to attempt to find support for having commenced the litigation." *Roddey* , 2025 WL 1104538, at *7 (internal citations and quotation marks omitted). "A party seeking jurisdictional discovery . . . bears the burden of showing necessity." *Molchatsky v. United States*, 778 F.Supp.2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013).

Here, as discussed, Plaintiff has not made a threshold showing that there is a basis for personal jurisdiction. Additionally, Plaintiff identifies no "genuine issue of jurisdictional fact" warranting discovery. *Daventree*, 349 F. Supp. 2d at 761; *see also Greer v. Carlson*, No. 12-CV-5484 (LTS) (SDA), 2020 WL 6064167, at *5 (S.D.N.Y. Oct. 14, 2020) ("Of course, however, discovery need not be granted to permit a fishing expedition for jurisdictional facts."); *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 64 (1st Dep't 2004) (affirming denial of jurisdictional discovery where plaintiff failed to offer "some tangible evidence which would constitute a 'sufficient start' in showing that jurisdiction could exist, thereby demonstrating that its assertion that a jurisdictional predicate exists is not frivolous" (citation omitted)). In fact, Plaintiff does not

14

make any proposals regarding jurisdictional discovery or identify any evidence that it seeks in order to establish jurisdiction. Therefore, the Court denies Plaintiff's request.

Because the Court grants Defendants' Motion to Dismiss for lack of personal jurisdiction, the Court does not address the merits of Plaintiff's claims. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (stating that "logic compel[s] initial consideration of the issue of jurisdiction over the defendant [because] a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim"); *Goldman*, 2024 WL 2832885, at *7 ("In light of the Court's conclusion that it lacks a statutory basis for jurisdiction over Defendant Trinity, the Court declines to consider Defendant's arguments regarding Plaintiff's failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).").

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss on the basis of lack of personal jurisdiction and dismisses the Complaint without prejudice as to all Defendants. The Clerk of Court is directed to terminate ECF No. 11 and close this case.

Dated: May 11, 2026
      White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

15